**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JOHN PEARSON, AND | |
| LESLEY PEARSON | : |
|     PLAINTIFFS, | : |
| | : CIVIL ACTION NO. 3:09cv1641(VLB) |
| | : |
|     v. | : JANUARY 19, 2012 |
| | : |
| BART LORANCAITIS ET AL., | : |
|     DEFENDANTS. | : |

<u>**MEMORANDUM OF DECISION GRANTING DEFENDANTS LORANCAITIS and VANGHELE'S [DKT. #53] MOTION FOR SUMMARY JUDGMENT**</u>

      Before the Court is a motion for summary judgment filed by the Defendant Police Officers Bart Lorancaitis and Christopher Vanghele (collectively referred to herein as the "Defendant Officers").  The Plaintiffs, John Pearson ("Pearson") and his wife Lesley Pearson, brought this suit pursuant to 42 U.S.C. § 1983 for false arrest and malicious prosecution in violation of the Fourth Amendment, and for unlawful retaliation in violation of the First Amendment against the Defendant Officers as well as  Jeffrey J. Engler ("Engler"), Plaintiffs' neighbor.  Plaintiffs also allege Connecticut common law defamation and intentional and negligent infliction of emotional distress.  For the reasons stated hereafter, the Defendant Officers' motion for summary judgment is granted as to the Plaintiffs' federal law claims and the Court declines to exercise its supplemental jurisdiction over Plaintiffs' state law claims.

<u>**Facts and Procedural Background**</u>

The following facts relevant to Defendants' motion for summary judgment are undisputed unless otherwise noted.  On December 21, 2008 at approximately 3:18 p.m., the Newtown Police Department ("NPD") received a complaint by Engler that his neighbor, Pearson, had used profanity towards him, was verbally abusive and caused annoyance by revving the engine of his ATV.  [Dkt. #53, Ex. A. Aff. of Lorancaitis and Vanghele ¶1, 4 and Ex. C, Arrest Warrant Application ¶2].

It is undisputed that there is a long history of disputes between the Pearson and Engler families.  Plaintiffs allege that the inter-family feud began in the summer of 2000, when Lesley Pearson's minor son was accused of stealing a quarter by Engler's wife.  [Dkt. #64, Ex. #6, Dep. of Lesley Pearson at 31-32]. From that time forward, Plaintiffs allege that the Englers took part in a "decade long persecution" of the Pearsons, effectuated by continuous harassment and false complaints.  [Dkt. #64, Pl. Opposition to Summary Judgment at 2].  Prior to the December 21, 2008 incident, Plaintiffs allege that the Englers filed numerous false complaints to NPD in an attempt to have Plaintiffs and other residents arrested.  [Dkt. #64, Pl. Rule 56 Stmt. ¶7].  The alleged false complaints involve accusations of unsafe driving, placing a raccoon carcass in the Englers' mailbox, dog bites among other miscellaneous accusations.  [Dkt. #64, Ex. #8].

Defendant Officers Lorancaitis and Vanghele, along with one Officer Borges, responded to Engler's complaint.  [Dkt. #53, Ex. C, Arrest Warrant Application].  First, the Defendants Officers interviewed Engler at his residence

who reported that Pearson while riding his ATV on his own property, stopped and screamed profanities at him and revved his engine and continued.  [*Id.*].

After interviewing Engler, the three officers proceeded to the Pearson residence to interview Pearson.  [Dkt. #53, Def. Rule 56 Stmt. ¶7].  A conversation between the Defendant Officers and Pearson ensued.  [Dkt. #53, Ex. C, Arrest Warrant Application ¶3].  The Defendant Officers allege that Pearson was not cooperative with their efforts to investigate the complaint and declined to give a sworn statement about the incident.  [Dkt. #53, Def. Rule 56 Stmt. ¶7].  Shortly afterward, Pearson called 911 to report that he was being harassed by three Newtown Police officers and asked to speak with the Connecticut State Police.  [Dkt. 53, Ex. A].

Pearson asserts that the Defendant Officers did not attempt to take a statement from him and harassed him.  [Dkt. #64, Pl. 56(a)2 Stmt., disputed issues of material fact at ¶11].  In support of this assertion, Pearson testified at length in his deposition recounting his interaction with the Defendant Officers.  [Dkt. #64, Ex. 1, Pearson Dep. 56-59].  Pearson testified that upon seeing Defendant Lorancaitis approach him, he stopped his ATV and stated "Oh, no, what did I do now?"  [*Id.* at 56].  According to Pearson, Lorancaitis then stated "[t]hat's not a very good way to start a conversation."   Lorancaitis asked Pearson "what did you say" and he responded "I didn't say anything."  [*Id.*].  Pearson testified that Lorancaitis then looked at him and started to point his finger and said "what exactly did you say?"  [*Id.* at 57].  Pearson responded "I haven't said anything. I'm going around my house in circles having fun, a good time."  [*Id.*].  Pearson

testified that Vanghele interrupted him and said "I know you fucking said something" in a "loud, angry, and belligerent" manner. [*Id.*]. Pearson then testified that he told his wife who just come out of their house that "this is unbelievable. I'm being harassed." [*Id.*]. Afterward, he told Vanghele "do you have an arrest warrant? Are you here on official police business? Are you doing an investigation?" [*Id.*]. Vanghele then asked Pearson "what the F did you say. I am sick of this." Pearson testified that he ended the encounter by stating to the Defendant Officers that "you don't have an arrest warrant for me. You're not here on official police business. I am asking you to leave my property and get out of here." [*Id.* at 58]. Pearson testified that Lorancaitas told him that he was being a "wise ass" and afterward Pearson instructed his wife to call 911. [*Id.*]. Lastly, Pearson testified that before the Defendant Officers left his residence Vanghele told him that they would be back and that he would be arrested. [*Id.* at 59].

After the Defendant Officers left Pearson's residence, they obtained a sworn statement from Engler. In his statement, Engler alleges that Pearson was riding his ATV approximately four to five feet from Engler's property line and stopped and screamed "you're a fucking dick head you asshole, make sure you have your phone on record you fuckin' prick." [Dkt. #53, Ex. B, Stmt. of Jeffrey Engler at 1]. Engler then alleges that Pearson revved his engine then continued to drive his ATV. *Id.* He further alleges that he heard Pearson scream more profanity at him, but that he could not make out the precise words. *Id.* After the officers obtained the sworn statement from Engler, they left the scene.

On December 28, 2008, Officer Lorancaitis prepared an arrest warrant application for Pearson for violation of Conn. Gen. Stat. §53a-181, Breach of the Peace in the Second Degree.  [Dkt. #53, Ex. C, Arrest Warrant Application].  The warrant included a description of the Defendant Officers' encounter with Pearson. The Defendant Officers asserted in the warrant that "Pearson drove up, stepped off the ATV and stated '[w]hat did I do wrong this time?'"  [*Id.* at ¶3].  Vanghele then asked Pearson what he had said to Engler and Pearson stated "not a single word."  [*Id.*].  Vanghele asked again what Pearson had said to which Pearson responded "[d]o you have a warrant?  I don't have to talk to you guys."  [*Id.*]. Pearson then stated that "I want your name and badge number, Sgt. Vanghele" and shouted to his wife "[t]hese cops are harassing me, this Sgt. Venghele."  [*Id.*]. The Defendant Officers asserted that Pearson referred to Vanghele with a profanity and went inside his residence.  [*Id.*].  The warrant also included a detailed description of Engler's sworn statement.

The warrant indicated that the Defendant Officers provided Pearson with an opportunity to provide a statement, but that he refused to cooperate.  It also noted that Pearson had been previously arrested by the NPD "on a warrant for an incident involving Engler and [that] a history of disputes exists between the families."  Pearson was arrested on August 11, 2007 "for driving his unregistered ATV in front of the Engler's residence and obscenely gesturing in the direction of the residence.  Pearson was recorded by Engler on video tape, driving the ATV and giving an obscene gesture."  [*Id.*].  The warrant also indicated that "Engler made a verbal statement to Loracaitis about the outcome of the previous cases…

[and] stated a judge placed a no contact order on Pearson" but that "Lorancaitis was unable to locate an active protective or restraining order."  [*Id.*].

The warrant was issued, and Pearson was arrested and prosecuted for the crime of disorderly conduct, in violation of General Statutes §53a-182.  [Dkt. #64, Pl. Opposition to Summary Judgment at 5].  On July 2, 2009, a jury acquitted Pearson of all charges arising out of the December 21, 2008 incident.  [*Id.*].

Pearson alleges that he did not have any interaction with any member of the Engler Family on December 21, 2008 and that he never revved his engine on his ATV as it "was technically impossible to do so as his ATV does not have a clutch."  [Dkt. #64, Pl. Rule 56 Stmt. ¶¶9-10,16].  He also alleges that he installed security cameras on his property prior to December 2008 that were visible outside his home and captured him riding his ATV that day but that the Defendant Officers never requested copies of such footage.  [*Id.* at ¶18].

## Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no factual issues exist.  *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.*, (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita*

*Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied."  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315-16 (2d Cir. 2006) (internal quotation marks and citation omitted).

### Analysis of False Arrest and Malicious Prosecution Claims

Defendant moves for summary judgment as to the Plaintiffs' false arrest and malicious prosecution claims arguing that the Defendant Officers had probable cause to arrest Pearson.  In analyzing a Section 1983 claim of false arrest or imprisonment, federal courts generally look to the law of the state where the arrest occurred.  *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004).  Under Connecticut law, "'[f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another,'" *Russo v. City of Bridgeport*, 479 F.3d 196, 204 (2d Cir. 2007) (quoting *Outlaw v. City of Meriden,* 43 Conn. App. 387, 392 (1996)).  "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Walczyk v. Rio*, 496 F.3d 139, 152 n.14 (2d Cir. 2007) (internal quotation marks and citation omitted). Connecticut law places the burden on the false arrest plaintiff to prove the absence of probable cause. *See Davis,* 364 F.3d at 433 (citing *Beinhorn v. Saraceno,* 23 Conn.App. 487, 491, 582 A.2d 208 (1990)); *Vangemert v. Strunjo,* No. 3:08CV00700 (AWT)*, 2010 U.S. Dist. LEXIS 29881, 2010 WL 1286850, at *4 (D. Conn. Mar. 29, 2010).

7

In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (citations omitted).  "To prevail on a malicious prosecution claim under Connecticut law, a plaintiff must prove the following elements: (1) the defendant initiated or continued criminal proceedings against the plaintiff; (2) the criminal proceeding terminated in favor of the plaintiff; (3) 'the defendant acted without probable cause'; and (4) 'the defendant acted with malice.'" *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009) (quoting *McHale v. W.B.S. Corp.*, 187 Conn. 444, 446 (1982)).  The existence of probable cause therefore also constitutes a defense against a malicious prosecution claim.

"Whether probable cause existed is a question that may be resolved as a matter of law on a motion for summary judgment if there is no dispute with regard to the pertinent events and knowledge of the officer." *Weinstock v. Wilk*, 296 F. Supp.2d 241, 256 (D. Conn. 2003) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 2003)).  Probable cause to arrest exists where an officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks and citations omitted).  Moreover, "a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and ... it is not relevant whether probable cause existed with respect to each individual charge, or,

indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006).

The Second Circuit has explained that "probable cause is a fluid concept . . . not readily, or even usefully, reduced to a neat set of legal rules . . . While probable cause requires more than a mere suspicion of wrongdoing, its focus is on probabilities, not hard certainties." *Walczyk,* 496 F.3d at 156 (internal quotation marks and citation omitted).  Moreover, the Second Circuit has instructed that "[i]n assessing probabilities, a judicial officer must look to the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.*  In sum, probable cause "requires only such facts as make wrongdoing or the discovery of evidence thereof probable." *Id.* at 157.

"Probable cause is to be assessed on an objective basis." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007).  "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citation omitted).  "Other than the facts known to the arresting officer at the time of arrest, an officer's state of mind is irrelevant." *Id.* at 153.  That is to say, "his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id.*  Thus, "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Id.*  (internal quotation marks omitted).

The issuance of a warrant by a neutral magistrate "is presumed reasonable because such warrants may issue only upon a showing of probable cause." *See Walczyk,* 496 F.3d at 155-56.  To rebut this presumption, the plaintiff must show that "the officer submitting the probable cause affidavit knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit or omitted material information, and that such false or omitted information was necessary to the finding of probable cause." *Soares v. State of Conn.,* 8 F.3d 917, 920 (2d Cir. 1993) (internal quotations omitted).  "If, after restoring the omitted information, probable cause remains, no constitutional violation of the plaintiff's Fourth Amendment rights has occurred. Summary judgment on this element is appropriate where the evidence, viewed in the light most favorable to the plaintiffs, discloses *no genuine dispute* that a magistrate would have issued the warrant on the basis of the corrected affidavits.  [T]here can be no such dispute where a court is able to determine, as a matter of law, that the corrected affidavit would have been sufficient to support a finding of probable cause." *Smolicz v. Borough/Town of Naugatuck*, 281 Fed.Appx. 32, 33 (2d Cir. 2008) (internal quotation marks and citation omitted).  Reviewing courts properly accord "considerable deference to the probable cause determination of the issuing magistrate." *Walczyk* at 157 (citing *Illinois v. Gates,* 462 U.S. 213, 238-39, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)).  "[A] Plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (internal citations omitted).

The Defendant Officers argue that the undisputed facts demonstrate that there was probable cause to arrest Pearson.  In their view, probable cause was predicated on the following undisputed facts: (1) the statements the complainant, Jeffrey Engler, made at the scene that Pearson revved his ATV close to the Englers' property line and swore at him; (2) Engler's sworn written statement to the same effect; (3) the Defendant Officer's interaction with and observation of Pearson in which he was uncooperative and acted in a threatening manner towards the officers; and (4) Pearson's prior arrest for driving an unregistered ATV and obscenely gesturing at Engler.

Plaintiffs argue that these facts cannot establish probable cause.  First, they contend that the Defendant Officers knew that Engler's statements were not credible or reliable and therefore could not support a probable cause determination.  Plaintiffs argue that Engler's veracity was called into question first by the well-known and long history of unsubstantiated complaints against the Pearsons by the Englers and second by the fact that Engler told the Defendant Officers there was a restraining order against Pearson that the Defendant Officers admittedly were unable to locate.  *Id.* at 13-14.  Second, Plaintiffs contend there could be no probable cause to arrest Pearson for breach of the peace because the alleged conduct did not take place in public which is a central element to the offense.  Third, Plaintiffs argue that the Defendant Officers unreasonably ignored Pearson's statement of his innocence and his denial of any wrongdoing towards Engler.  Fourth, Plaintiffs argue that probable cause should not have been found where the Defendant Officers failed to further investigate

11

Engler's accusations by (1) failing to obtain a written statement from Pearson or his wife or interview Pearson's wife; (2) failing to request the potentially exculpatory videotape from Pearson's surveillance camera; (3) failing to examine Pearson's ATV which would have demonstrated that the ATV was mechanically unable to "rev" as Engler had claimed.  Lastly, Plaintiffs argue that Pearson's prior arrest cannot corroborate Engler's accusations as his prior arrest was not based on similar conduct.

Plaintiffs also argue that the Defendant Officers recklessly omitted crucial information from the Arrest Warrant and if such information had been included the corrected warrant could have not supported a finding of probable cause. Plaintiffs reiterate their prior arguments and argue that arrest warrant should have included the following information: (1) that the Engler family have made previous false complaints; (2) that Defendant Vanghele threatened Pearson; (3) that Pearson and his wife had not been given a chance to provide a written statement; (4) that both the Engler and Pearson family "run constant video surveillance of their property and that the Officers made no efforts to secure such footage;" (5) that the warrant application contained a false statement regarding a restraining order on Pearson; and (6) that the warrant application contained false information that Pearson was arrested for similar conduct.  [Dkt. #64, Pl. Mem. at 24].

It has long been recognized that "probable cause is based on the facts warranting arrest and not the statute pursuant to which a plaintiff was charged" and the fact that the "actual charges were brought under a difference statute

does not defeat a finding of probable cause." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010); *Jaegly*, 439 F.3d at 153 ("The [Supreme] Court [has] rejected the view that probable cause to arrest must be predicated upon the offense invoked by the arresting officer, or even upon an offense 'closely related' to the offense invoked by the arresting officer...."); *Rutigliano v. City of New York*, 326 Fed. Appx. 5, 7 (2d Cir. 2009) ("[O]ur Court has held that a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest.") (internal quotation marks and citation omitted); *see also Zellner*, 494 F.3d at 369 ("[A]n arrest is not unlawful so long as the officer has knowledge of, or reasonably trustworthy information as to, facts and circumstances sufficient to provide probable cause to believe that the person arrested has committed any crime.").   Therefore the charge invoked by the arresting officer is not dispositive or always even relevant to the probable cause analysis.   Plaintiffs argue that "[t]here was no probable cause to arrest John Pearson for beach of the peace because the conduct described in the warrant did not take place in a public place." [Dkt. #64, Pl. Mem. 26].   Under Conn. Gen. Stat. §53a-181(b), a person is guilty of breach of the peace only if their conduct occurs in a public place.   However as explained above, Plaintiff's argument is erroneous in light of well-established Supreme Court and Second Circuit law as the probable cause inquiry is not limited to the charges invoked by the arresting officer.

Pearson was prosecuted for disorderly conduct, an offense which is substantially similar to breach of the peace under Connecticut law, but does not require that the alleged violation occur in a public place.  The Court will therefore analyze whether probable cause in the instant case can be predicated on a disorderly conduct charge.  Under Connecticut law:

> A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior; or (2) by offensive or disorderly conduct, annoys or interferes with another person; or (3) makes unreasonable noise[.]" Violation of the statute is a class C misdemeanor.

Conn. Gen. Stat. §53a-182(b).  A person of reasonable caution would conclude that Pearson's alleged conduct of screaming profanities at Engler while revving his ATV qualified as disorderly conduct under Conn. Gen. Stat. §53a-182(b) as such behavior was threatening, offensive and annoying and done with the intent to cause annoyance or inconvenience.  Therefore, the Defendant Officers, as will be discussed in more detail below, had knowledge sufficient to warrant a person of reasonable caution in the belief that disorderly conduct in violation of Conn. Gen. Stat. §53a-182(b) had been committed by Pearson.

   i.   *Pearson's arrest was supported by probable cause*

The Court is mindful that since the Defendant Officers obtained a warrant to arrest Pearson in this case that the Court must accord deference to the probable cause determination of the issuing magistrate.  When viewing the facts in the light most favorable to the Plaintiffs and taken into consideration Pearson's account of his interaction with the Defendant Officers, the Court finds that a

person of reasonable caution would believe that Pearson had engaged in disorderly conduct.

First, the Defendant Officers interviewed Engler, the alleged victim of Pearson's conduct, and then obtained a sworn statement under penalty of perjury from him that Pearson revved his ATV close to the Englers' property line and swore at him.   Typically, a "police officer may rely upon the statements of victims or witnesses to determine the existence of probable cause for the arrest, regardless of the ultimate accurateness or truthfulness of the statements." *Bourguignon v. Guinta*, 247 F.Supp.2d 189, 193 (D. Conn. 2003) (internal quotation marks and citation omitted); *Stampf v. Long Island R.R. Authority*, No.CV-07-3349, 2010 WL 2517700, at *3 (E.D.N.Y. June 13, 2010) (alleged victim's signed statement under penalty of perjury and subsequent personal report of the allegation to defendant officer "sufficient to lead a reasonable police officer to conclude there was probable cause" for arrest).

Second, the Defendant Officers observations of and interactions with Pearson corroborated Engler's account of Pearson's allegedly belligerent and threatening behavior.  It is undisputed that the Defendant Officers approached Pearson while he was riding his ATV to interview him regarding Engler's complaint and that Pearson engaged in a heated discussion with the Defendant Officers in which he denied that he said anything to Engler, accused the Defendant Officers of harassing him and threatened to call 911 to report the Officers for their harassment.  *See* [Dkt. #64, Ex. 1, Pearson Dep. 56-59].  It is also undisputed that Engler instructed the Defendant Officers to leave his property

and for his wife to call the police.  Based on Pearson's own account of his behavior towards the Defendant Officers, a reasonable person would view Pearson's behavior towards the Officers as corroborative of Engler's accusation that he had behaved in a hostile and threatening manner towards him.

Third, the Defendant Officers investigated Pearson's prior criminal history and learned that he had been previously arrested by the NPD on a warrant for a similar incident involving Engler.  *See* [Dkt. #53, Ex. C, Arrest Warrant Application].  "Information concerning prior arrests, when combined with other factors, also may constitute a basis for probable cause to arrest a suspect."  *Doe v. Immigration and Customs Enforcement*, No.M-54(HB), 2004 WL 1469464, at *6 (S.D.N.Y. June 29, 2004); *Richards v. Gasparino*, 374 Fed.Appx. 135, 136-137 (2d Cir. 2010) (finding that police officer's knowledge of arrestee's past behavior based on a prior arrest along with the officer's observations at the scene provided sufficient information to lead an objectively reasonable officer to believe that a crime had been committed).  The Defendant Officers learned that Pearson was previously arrested for similar conduct, namely driving his unregistered ATV in front of Engler's residence and obscenely gesturing in the direction of the residence.  The Defendant Officers also learned that Engler had videotaped Pearson riding his ATV and obscenely gesturing at him during that prior incident.

Contrary to the Plaintiffs' contention, a reasonable person would view Pearson's prior arrest as involving conduct that is substantially similar and thus corroborative.  Plaintiffs note that Pearson's previous arrest occurred on August 11, 2007 when he was charged with operation of ATV on a roadway, creating a

16

public disturbance and excessive noise.  Plaintiffs argue that since Pearson's prior arrest was for illegal operation of his ATV, his arrest was too dissimilar to corroborate Engler's accusation.  [Dkt. #63, Def. Mem. 12-13].  Plaintiffs suggest that the only similarity between the two arrests was that Pearson was riding his ATV.  [*Id.*].  However, Plaintiffs have tried to hide the fact that Pearson was not only arrested for the illegal operation of his ATV but also for creating a public disturbance.  The elements of the offense of creating a public disturbance under Conn. Gen. Stat. § 53a-181a[1] are substantially similar to both the elements of disorderly conduct under Conn. Gen. Stat. § 53a-182 and breach of the peace under Conn. Gen. Stat. §53a-181(a).  The fact that Pearson was riding his ATV was therefore not the only similarity between the two arrests.  In fact, it appears the only major difference between Engler's prior complaint which was the basis for Pearson's prior arrest and his current complaint was that Pearson was driving his ATV on the street in front of Engler's residence as opposed to Pearson driving his ATV on his own property abutting Engler's residence.  In both incidents, Engler accused Pearson of harassing him while on his ATV.  Accordingly, the Court finds Plaintiffs' argument that Pearson's prior arrest was too dissimilar to support a probable cause finding to be unpersuasive.  The facts and circumstances of Pearson's prior arrest was therefore an additional source of trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense had been committed.

---

[1] "A person is guilty of creating a public disturbance when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he (1) engages in fighting or in violent, tumultuous or threatening behavior; or (2) annoys or interferes with another person by offensive conduct; or (3) makes unreasonable noise." Conn. Gen. Stat. §53a-181a.

Plaintiffs argue that the Defendant Officers knew that Engler's statements were not reliable and therefore his statements could not constitute reasonably trustworthy information to warrant a person of reasonable caution in the belief that an offense had been committed.  Generally, an "arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity."  *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995).  "The most common situation in which doubts as to veracity arise is when there exists a prior relationship between the victim and the accused that gives rise to a motive for a false accusation."  *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998).  Here when viewing the facts in the light most favorable to the non-moving party, the Court must assume that the Defendant Officers were aware of the long history of unsubstantiated complaints against the Pearsons by the Englers.  In fact, the Defendant Officers included in the warrant that a "history of disputes exists between the families."  [Dkt. #53, Ex. C, Arrest Warrant Application].  In addition, the Defendant Officers also included in the warrant that they were unable to locate the restraining order that Engler stated a judge had placed on Pearson. [*Id.*].  Therefore on the face of the information provided in the arrest warrant, the Defendant Officers appeared to have been aware  and in fact informed the judicial officer that there existed a prior relationship between Engler and Pearson that gave rise to a motive for false accusation.

Where a victim's veracity has been called into question, courts have "not require[d] that the victim's statement be wholly ignored, but that the police have additional information to buttress the victim's statement." *Williams v. City of New York*, No.02Civ.3693(CBM), 2003 WL 22434151, at *5 (S.D.N.Y. Oct. 23, 2003) (internal quotation marks and citation omitted); *Jovanovic v. City of New York*, No.04 Civ.8437(PAC), No.04Civ.8437(PAC), 2006 WL 2411541, at *7 (S.D.N.Y. Aug. 17, 2006) (holding that when circumstances call a victim's veracity into doubt "[an] officer has a duty to assess the reliability of the victim and ... to investigate the allegations and corroborate them," before his statement can serve as a basis for probable cause); *McBride v. City of New Haven*, No.3:97CV1475, 2000 WL 559087, at *11-12 (D. Conn. Mar. 30, 2000) (holding that the defendant officers had to "do more" than rely solely on the statements of a victim whose veracity had been called into question and where police did more "the fact that the [victim's] veracity may be questioned does not indicate that probable cause was lacking.").

Here the Defendant Officers did not simply rely on Engler's version of the events.  After speaking with Engler, they did not just arrest Pearson but instead proceeded to the Pearson residence to interview Pearson and get his side of the story.   As discussed above during that encounter, the Defendant Officers observed Pearson's behavior and demeanor which corroborated Engler's account of Pearson's allegedly threatening and hostile conduct.  In addition, as discussed above the Defendant Officers investigated Pearson's prior criminal history and learned that he had been previously arrested on a warrant for a substantially similar incident in which Engler had complained that Pearson had

harassed him while riding on his ATV.  The Defendant Officers further learned that Engler had videotaped Pearson harassing him during this earlier incident. Therefore Engler's statements were corroborated or buttressed by the Defendant Officers' own observations of and interaction with Pearson as well as the facts and circumstances of Pearson's prior arrest.  Accordingly, such information could be considered "reasonably trustworthy" information sufficient to warrant a person of reasonable caution in the belief that Pearson had committed an offense and was therefore properly considered when the Defendant Officers made their probable cause determination.

Even if Engler was lying as Pearson contends it is well recognized that probable cause can "exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. U.S.*, 25 F.3d 98, 102 (2d Cir. 1994).   Here since the Defendant Officers sought to obtain Pearson's perspective to no avail and later corroborated Engler's statements they acted reasonably and in good faith in relying on such information regardless of its ultimate accurateness and truthfulness.

In addition, the Defendant Officers obtained a warrant to arrest Pearson which meant that a neutral magistrate also came to a determination that there was sufficient probable cause to support Pearson's arrest.  As noted above, the warrant application included and did not omit the facts which called into question Engler's veracity for the neutral magistrate's consideration.  Therefore since the warrant included such facts which called into question Engler's veracity, the

Court must give "considerable deference to the probable cause determination of the issuing magistrate."   The Court will now address Plaintiffs' specific arguments that probable cause was lacking.

ii.   *The Defendant Officers had no duty to investigate further once there was a reasonable basis to believe there was probable cause*

First, Plaintiffs argue that probable cause cannot be supported in light of Pearson's denial of any wrongdoing to the Defendant Officers and that the Defendant Officers unreasonably relied on Engler's account over his statements to the contrary.   It is undisputed that Pearson told the police that he had said nothing to Engler that day.   However, it is well established that "a finding of probable cause is not foreclosed where a police officer is presented with different stories from an alleged victim and an arrestee."   *Oblio v. City University of City of New York*, No.CV-01-5118, 2003 WL 1809471, at *7 (E.D.N.Y. April 7, 2003) (citing *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001)).   "[A]n officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause."   *Panetta*, 460 F.3d at 395-96; *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 135 (E.D.N.Y. 1998) ("[Law enforcement officers] have no duty to investigate an exculpatory statement of the accused, and their refusal to do so does not defeat probable cause.") (citations omitted); *De Santis v. City of New York*, No.10CIV.3508(NRB), 2011 WL 4005331, at 7 (S.D.N.Y. Aug. 29, 2011) ("the protestations of innocence by an arrestee are so common as to be virtually a matter-of-course").   Contrary to Plaintiffs' argument, once the Defendant Officers had a sufficient basis to believe there was probable cause, they were not obligated to further investigate Pearson's protestations of innocence.

The Defendant Officers were likewise not obligated to request the potentially exculpatory videotapes from either Pearson or Engler's surveillance cameras, obtain a sworn statement from either Pearson or his wife, interview Pearson's wife, or examine Pearson's ATV to determine if it could rev as Plaintiffs contend in order to establish probable cause. "[O]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Curley*, 268 F.3d at 70. As explained above, once the Defendant Officers had a reasonable basis to believe there was probable cause based on Engler's sworn statement buttressed by their observations and interactions with Pearson and Pearson's prior arrest, the Defendant Officers were not required to further investigate or take any additional steps before applying for a warrant and arresting Pearson. "Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Krause v. Bennet*, 887 F.2d 362, 372 (2d Cir. 1989); *Kilburn v. Vill. of Saranac Lake*, 413 Fed. Appx. 362, 363-364 (2d Cir. 2011) (An officer need not "prove plaintiff's version wrong before arresting him, even if an investigation might have cast doubt upon the basis for the arrest.") (internal citations and quotations omitted); *see also Carson v. Lewis*, 35 F. Supp. 2d 250, 261-62 (E.D.N.Y. 1999) (citing cases holding "once probable cause established the police do not have to endeavor to negate it.").

The facts and holdings of the Second Circuit's recent decisions in *Gleis v. Beuhler*, 374 Fed. Appx. 218 (2d Cir. 2010) and *Jean v. Montina*, 412 Fed. Appx. 352, (2d Cir. 2011) are instructive to the present case.  In *Gleis*, the defendant officer arrested the plaintiff pursuant to an arrest warrant in which the plaintiff argued the officer recklessly omitted any reference to the existence of surveillance tapes of the incident.  *Gleis*, 374 Fed. Appx. at 220.  The Second Circuit held that the defendant officer had probable cause to arrest the plaintiff based on the victim's sworn statement describing the incident and concluded that the tapes simply constituted a competing version of the relevant events, which the defendant officer was required neither to consider nor investigate before seeking an arrest warrant.  Moreover, the videotapes were not necessary to the finding of probable cause, because they were not "plainly exculpatory evidence."  *Id.*  Here, similarly, the Defendant Officers were not required to determine whether there were any videotapes of the incident, nor investigate them even if they had been aware of their existence as Plaintiffs contend.

In *Jean*, the Second Circuit rejected the plaintiff's argument that the defendant officer lacked probable cause for arrest because he "failed to interrogate [the plaintiff], to interview eyewitnesses, or to discover and read written statements." *Jean*, 412 Fed. Appx. at 353-54.  The Second Circuit noted that there was no indication that the defendant officer deliberately disregarded facts known to him that would establish that the arrestee acted in self-defense and that "'[w]e do not impose a duty on the arresting officer to investigate exculpatory defenses offered by the person being arrested or to assess the

credibility of unverified claims of justification before making an arrest.'" *Id.* (quoting *Jocks v. Tavernier*, 316 F.3d 128, 135-36 (2d Cir. 2003)). The Second Circuit held that the "failure to conduct a more extensive investigation, before arresting [plaintiff]" did not defeat probable cause. *Id.*  For these same reasons, the Defendant Officers failure to conduct a "more extensive investigation" by obtaining a sworn statement from either Pearson or his wife, interviewing Pearson's wife or examining Pearson's ATV does not defeat probable cause. Plaintiffs' argument that the Defendant Officers had the duty and obligation to investigate and take these further steps to find probable cause is unpersuasive in light of long standing precedent in this Circuit to the contrary.   Once the Defendant Officers had a sufficient basis to believe probable cause existed to arrest Pearson, they were no longer obligated under the law of this Circuit to take any additional steps or investigate more.

The Court notes that Plaintiffs contend that the Defendant Officers did not attempt to take a statement from Pearson whereas the Defendant Officers contend that they did attempt to take a statement and were rebuffed by Pearson. The Defendant Officers argue that when they approached Pearson to interview him after speaking with Engler they were attempting to take his statement.  The Defendant Officers further argue that Pearson's refused to give a statement when he refused to answer the Defendant Officer's additional questions and ordered that they leave his property in the absence of an arrest warrant.   Pearson suggests in his opposition to the Defendant Officer's motion for summary judgment that he was willing to give a statement and that when he ordered the

Officers off his property that he was not declining to give a statement to them. [Dkt. #63, Def. Mem. 12]. Since, the probable cause analysis is solely based on the facts and circumstances within the Officers' knowledge the fact that Pearson was later willing to give a statement, or that contrary to his words and deeds he was disposed to giving a statement prior to his arrest, is not relevant or probative to the analysis. It was reasonable for the Defendant Officers to conclude that Pearson refused to give a statement based on the undisputed fact that Pearson ordered the Defendant Officers off his property and told them that they were not welcomed back unless they had a warrant for his arrest. It would have been impossible for the Defendant Officers to know that Pearson was willing to give a statement after he ordered them off his property. Therefore, Pearson's assertion that he was willing to give a statement cannot possibly defeat a finding of probable cause. Moreover as discussed above, the Defendant Officers were not obligated to investigate further and obtain Pearson or even his wife's sworn statement before arresting him. For the reasons discussed above, even if the warrant application had included a statement to the effect that the Officers did not attempt to obtain a sworn statement from Pearson or his wife that would not have vitiated a finding of probable cause.

### iii. *The Defendant Officers did not provide false information or recklessly omitt material information from the arrest warrant*

The Plaintiffs argue that probable cause could not have been supported if the warrant had included the fact that Defendant Vanghele had harassed Pearson and had threatened to come back and arrest him. Plaintiffs seem to be suggesting that Pearson's arrest was motivated by the Defendant Officers'

animosity towards him and therefore not based on probable cause.  However, it is well established that an officer's state of mind is irrelevant to the probable cause analysis.  An officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause … the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action."  *Devenpeck*, 543 U.S. at  153 (internal quotation marks omitted).  "Where probable cause exists for the arrest, the officer's underlying motive in arresting and charging the plaintiff will not be examined by the courts." *Martinsky v. City of Bridgeport*, No.3:09-cv-759, 2011 WL 3880921, at *22 (D. Conn. Sept. 2, 2011) (citing *Singer*, 63 F.3d at 120).  Accordingly, the fact that Vanghele allegedly threatened and harassed Pearson is irrelevant to the Court's probable cause inquiry and therefore the omission of Vanghele's threat from the warrant application was not necessary to the finding of probable cause.

As discussed above since the Court has determined that Pearson's prior arrest concerned substantially similar conduct, the Court does not find that the Defendant Officers provided false information in the warrant with regard to Pearson's prior arrest or recklessly omitted material information from the warrant regarding the arrest as Plaintiffs contend.  The fact that the warrant did not include the date or list out the specific charges of the prior arrest was not a material omission as the fact that Pearson was arrested for illegal operation of his ATV, creating a public disturbance and excessive noise in 2007 would not have

26

undermined the probable cause determination.  In fact as discussed above, if the warrant had included the specific charges that would have likely bolstered not defeated a probable cause finding as the elements of the offense of creating a public disturbance under Conn. Gen. Stat. § 53a-181a are substantially similar to the elements of disorderly conduct under Conn. Gen. Stat. § 53a-182 and breach of the peace under Conn. Gen. Stat. §53a-181(a).

Plaintiffs argue that the warrant omitted the fact that both the Pearson and Engler families run constant video surveillance of their property.  As discussed above, the Second Circuit's reasoning and decision in *Gleis* is applicable to the present case and therefore the Defendant Officers were under no obligation to investigate and obtain the surveillance footage where such video footage was not necessary to the finding of probable cause and where it was not "plainly exculpatory evidence." *See Gleis*, 374 Fed. Appx. at 220.  Therefore the warrant did not omit material information with respect to the existence of surveillance tapes necessary to the finding of probable cause.

Plaintiffs also argue that the warrant omitted the fact that the Engler family has made previous false complaints.  However as discussed above, the warrant did include information pertaining to this issue.  The warrant application indicated that a "history of disputes exists between the families" and that the Defendant Officers were unable to locate a restraining order that Engler claimed a judge had placed on Pearson.  Therefore, the warrant application included facts which indicated to the issuing magistrate that there was reason to doubt Engler's veracity.  If the warrant had included a statement to the effect that Engler had

made false or unsubstantiated complaints against Pearson in the past that would have had the same effect of raising doubts as to Engler's veracity as the information that was already provided in the warrant application.  Therefore even if the warrant application had included such information, the corrected affidavit would have still been sufficient to support a finding of probable cause.  As discussed above since the Defendant Officers did not rely solely on Engler's statement but instead buttressed or corroborated his statement there was sufficient information to support a probable cause determination.  Accordingly, it was not significant to the probable cause determination that the Defendant Officers did not actually use the words "false or unsubstantiated complaints" in the arrest warrant but instead indicated that there was a long history of disputes.

Lastly, Plaintiffs contend that the warrant application falsely states that there was a restraining or no contact order against Pearson and that the Defendant Officers were aware that no restraining order exists and intentionally included that false statement in the warrant application.  [Dkt. #64, Pl. Mem. 14]. However, the Court does not construe the warrant application to contain a positive statement that a restraining order exists.  The warrant application simply describes the fact that Engler verbally stated to Defendant Lorancaitis that a judge had placed such an order on Pearson and that Lorancaitis had investigated into Engler's statement and found it unsubstantiated.  Therefore the warrant application does not state that a restraining order exists as Plaintiffs contend. The warrant application merely describes the statement that Engler made and the efforts the Defendant Officers made in investigating into and corroborating such

statement.  Therefore the Court does not find the warrant application included false information with respect to the alleged restraining order.

Accordingly, Plaintiffs have failed to demonstrate that the Defendant Officers submitted the warrant application knowingly and intentionally, or with reckless disregard for the truth, made a false statement or omitted material information that was necessary to the finding of probable cause.  For the reasons discussed above, the Defendant Officers had probable cause to arrest Pearson and the Court accords deference to the issuing magistrate's determination of probable cause on the basis of the warrant application.  Since probable cause is a defense to both a Section 1983 claim for false arrest and malicious prosecution summary judgment is granted as to these claims.

<u>Analysis of Qualified Immunity</u>

"With respect to qualified immunity, the Supreme Court has recently reminded us that 'the appropriate question is the objective inquiry of whether a reasonable officer could have believed that [his actions were] lawful, in light of clearly established law and the information the officer [ ] possessed.'"  *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (quoting *Wilson v. Layne*, 526 U.S. 603 (1999)).  "Lawful arrest, i.e., arrest pursuant to probable cause, requires the arresting officer to have "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Id.* (internal quotation marks and citation omitted).  "[I]n the context of a qualified immunity defense to an

allegation of false arrest, the defending officer need only show 'arguable' probable cause." *Id.* "Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law." *Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1997) (internal quotation marks and citation omitted). Arguable probable cause exists then "'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks and citation omitted).

"Although the tests for probable cause and arguable probable cause are thus not congruent, the concept of probable cause is the same in both inquiries. Probable cause existed if *at the moment the arrest was made* ... the facts and circumstances *within the [officers'] knowledge* and of which they *had reasonably trustworthy information* were sufficient to warrant a prudent man in believing' that [the suspect] had violated the law, and an officer sued under the Fourth Amendment for false arrest is entitled to immunity if a reasonable officer could have believed *that probable cause existed.*" *Zellner*, 494 at 370 (internal quotation marks and citations omitted) (emphasis in the original). "Accordingly, like the probable cause analysis, the analysis of a qualified immunity defense to claims that official actions were taken without probable cause entails an inquiry into the facts known to the officer at the time of the arrest a court must evaluate the objective reasonableness of the [Officer's] conduct in light of ... the

information the ... officers possessed." Id. (internal quotation marks and citations omitted).

Since the Court has determined that the Defendant Officers had probable cause to arrest Pearson, the Defendant Officers are clearly entitled to qualified immunity as well.  It is clear that there was arguable probable cause to arrest Pearson based on the undisputed facts.  In such circumstances where the victim provided a sworn statement, the officers' observations of the suspect corroborated the victim's statement, and the suspect had been arrested pursuant to a warrant in a substantially similar incident involving the same victim, it was objectively reasonable for the officers to believe probable cause existed even where the victim's veracity had been called into question.  It is clearly established that where officers do more than solely rely and corroborate the statements of a victim whose veracity has been called into question that such statements may serve as a sufficient basis for finding probable cause.  See *Williams*, 2003 WL 2243151, at *5; *McBride*, 2000 WL 559087, at *11-12.  Moreover, considering there were no material omissions or false statements in the warrant application, it was objectively reasonable to believe that the arrest was supported by probable cause when a neutral magistrate issued the warrant.

In addition, whether or not the statements made by Engler were actually truthful is irrelevant as long as the Defendant Officers relied on them in good faith. *See Escalera*, 361 F.3d at 745 ("[T]he actual accuracy or veracity of the statement is irrelevant to a determination of whether [the defendants have] arguable probable cause").  Plaintiffs have offered no evidence to legitimately

challenge the officers' good faith belief in Engler's story considering that the Officer did more than simply rely on Engler's statement.  In the circumstances of the present case, it was objectively reasonable for the officers to credit Engler's account and conclude there was probable cause for Pearson's arrest.  At the very least, officers of reasonable competence could disagree on whether the probable cause test was met in such circumstances.

### Analysis of First Amendment Retaliation Claim

Plaintiffs claim that their First Amendment rights were violated on grounds that Defendants retaliated against them for exercising their freedom of speech. "To establish a retaliation claim under section 1983, a plaintiff initially must show that his conduct was protected by the first amendment, and that defendants' conduct was motivated by or substantially caused by his exercise of free speech." *Gagliardi v. Village of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994) (internal citations and quotation marks omitted).  However, probable cause will defeat a claim that an arrest or prosecution was based on a retaliatory motive.  *See Hartman v. Moore*, 547 U.S. 250, 265-66, (2006); *Curley*, 268 F.2d at 73 (Arrestee could not prevail on First Amendment retaliation claim where arrest was supported by probable cause).  Because the Court finds that the Defendant Officers had probable cause, Plaintiffs' First Amendment claim also fails.

Plaintiffs in their opposition to the Defendant Officer's motion for summary judgment also allege that the Defendants violated their right to petition for redress of grievances under the First Amendment because the Pearsons'

"numerous complaints [to NPD]…have fallen on deaf ears."   [Dkt. #64, Pl. Opposition to Summary Judgment at 2].   However, since this claim was not asserted in Plaintiffs' complaint, it cannot be raised for the first time in response to the Defendant Officer's summary judgment motion.  It is well established that a plaintiff's claims raised for the first time in response to a summary judgment motion could not be used as a means to amend complaint.  *Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007);  *Isaac v. City of New York*, 701 F. Supp. 2d 477, 491 (S.D.N.Y. 2010) ("Plaintiff may not use his submission in opposition to summary judgment as a back door means to amend the complaint.");  *Golodner v. City of New London*, No.3:08-cv-1319(WWE), 2010 WL 3522489, *9 (D. Conn., Sept. 1, 2010) (Dismissing First Amendment claim asserting that defendants violated plaintiff's right to petition for redress of grievances by failing to properly investigate complaints on grounds that plaintiff "cannot amend his claim through a response to summary judgment."). Accordingly, summary judgment on Plaintiffs' First Amendment claim is granted.

### Remaining State Law Claims

Having granted summary judgment as to the federal law claims against the Defendants, the Court declines to exercise its supplemental jurisdiction over the Plaintiffs' state law claims.  "Supplemental or pendent jurisdiction is a matter of discretion, not of right.   Thus, the court need not exercise supplemental jurisdiction in every case."  *Nicholson v. Lenczewski*, 356 F.Supp.2d 157, 165-66 (D. Conn. 2005) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 715-26 (1966)). "The federal court should exercise supplemental jurisdiction and hear a state

claim when doing so would promote judicial economy, convenience and fairness to the litigants.  The court should decline to exercise supplemental jurisdiction, however, when state law issues would predominate the litigation or the federal court would be required to interpret state law in the absence of state precedent. In addition, the court may decline to exercise supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction." *Id.* (citing 28 U.S.C. § 1367(c)(3)); *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims").

Here, while this case is several years old and nearly ready for trial, the Court has not had occasion to, and thus has not ruled on any prior substantive motions and therefore has not developed familiarity with any of the state law issues in this case.  In addition, all of the claims against Defendant Engler are purely state law claims as Defendant Engler cannot be held liable under Section 1983 since he was not operating under color of state law.  *See Richardson v. McKnight*, 521 U.S. 399, 403 (1997) (Section 1983 "imposes liability only where a person acts 'under color' of a state 'statute, ordinance, regulation, custom, or usage.') (citing 42 U.S.C. § 1983).   Defendant Engler has failed to file any dispositive motions in this case and therefore the Court has not had the opportunity to develop any familiarity with any facts or issues with respect to the claims made against him.   *See Horton v. Town of Brookfield*,

34

No.CIV.A.3:98CV01834, 2001 WL 263299, *9 (D. Conn. March 15, 2001) ("In balancing the factors in this case, the court declines to exercise supplemental jurisdiction over the remaining claims.  The case is two years old and nearly ready for trial.  In addition, the court has ruled on various dispositive motions and developed familiarity with the issues in the case.  However, none of the court's rulings have specifically addressed the remaining state law claims, and the court is not familiar with those claims.").  Since the remaining claims are purely state law claims, the Court declines to exercise jurisdiction over those claims.  Those claims are dismissed without prejudice to refiling in state court.

<u>Conclusion</u>

Based upon the above reasoning, the Defendants' [Dkt. #53] motion for summary judgment is GRANTED.

IT IS SO ORDERED.

_____/s/_____

Hon. Vanessa L. Bryant

United States District Judge

Dated at Hartford, Connecticut: January 19, 2012